```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                 Civil No. 17-7(DSD/SER)
```

Restaurant Recycling, LLC,

       Plaintiff,

v.                                                **ORDER**

New Fashion Pork, LLP,

       Intervenor Plaintiff,

v.

Employer Mutual Casualty Company
d/b/a EMC Insurance Companies and
Hamilton Mutual Insurance Company,

       Defendants.

    Brandon M. Schwartz, Esq., Michael D. Schwartz, Esq. and Schwartz Law Firm, 600 Inwood Avenue North, Suite 130, Oakdale, MN, counsel for plaintiff.

    David C. Kim, Esq., Dean M. Zimmerli, Esq. and Gislason & Hunter LLP, 2700 South Broadway, New Ulm, MN, counsel for intervenor plaintiff.

    Beth A. Jenson Prouty, Esq. and Arthur Chapman, 500 Young Quinlan Building, 81 South 9th Street, Minneapolis, MN., counsel for defendants.

This matter is before the court upon the motion for judgment on the pleadings by defendants Employer Mutual Casualty Company d/b/a EMC Insurance Companies and Hamilton Mutual Insurance Company.[1]  Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants defendants'

---

[1] Unless otherwise stated, the court will refer to defendants collectively as EMC.

motion.

**BACKGROUND**

This insurance coverage dispute arises out of an underlying claim by intervenor plaintiff New Fashion Pork (NFP)[2] against plaintiff Restaurant Recycling, LLC and Superior Feed, LLC.[3] NFP is a pork producer that owns and operates feed mills where it blends grain, fat, and other ingredients to create feed for its swine. ECF No. 9-1 ¶ 6.[4] Restaurant Recycling is a manufacturer and supplier of fat products for animal feed. Id. ¶ 7. NFP alleges that, between July 1, 2014, and September 24, 2015, Restaurant Recycling delivered four shipments of fat products to NFP that were contaminated with lasalocid and lascadoil. Id. ¶¶ 9-10. Lasalocid is a medication regulated by the Food and Drug Administration that is generally used in chicken and turkey feed, but it is not approved for use in swine. Id. ¶ 11. Lascadoil is a byproduct created in the production of lasalocid and is only approved for use as biofuel. Id. ¶ 10.

NFP claims that it used Restaurant Recycling's fat products to

---

[2] Before NFP was allowed to intervene, see ECF No. 28, Restaurant Recycling argued that defendants' motion should be denied because NFP was a not a party to the action. Because NFP has intervened, this argument is moot.

[3] Superior Feed is not a party to this action.

[4] The underlying complaint is not attached to an affidavit or declaration. The court will refer to it by its docket number.

produce feed for its swine and the contaminated feed caused serious health problems in its swine. Id. ¶¶ 14-15. On November 23, 2016, NFP filed an amended complaint in Ramsey County alleging breach of contract, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, strict liability, and fraud.[5]

EMC insured Restaurant Recycling under Policy No. 4D5-66-11-15 from July 2, 2014 to July 2, 2015, which provided general commercial liability coverage. See ECF No. 9-2. The policy contains an absolute pollution exclusion. Specifically, the policy does not cover: "'Body injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." Id. at 44. The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed." Id. at 38.

On January 3, 2017, Restaurant Recycling filed this action seeking a declaration that EMC is obligated, pursuant to the policy, to provide defense and coverage for all claims asserted by

---

[5] At the hearing, the parties informed the court of a possible settlement that would resolve the underlying litigation but not the insurance coverage dispute. On June 22, counsel for Restaurant Recycling informed the court that the underlying litigation had been settled for $15,000. See ECF. No. 32.

NFP and for any damages awarded. Defendants now move for judgment on the pleadings.

## DISCUSSION

### I. Subject Matter Jurisdiction

Because the underlying litigation was settled for an amount less than $75,000, the court requested that the parties submit letters on whether the court retained jurisdiction. Both parties concluded that the settlement agreement did not divest the court of jurisdiction. The court agrees. "It is well established that the requirements for diversity jurisdiction must be satisfied only with respect to the [amount alleged in the complaint at] the time of filing." Scottsdale Ins. Co. v. Universal Crop Protection All., LLC, 620 F.3d 926, 931 (8th Cir. 2010). Furthermore, "subsequent events reducing the amount in controversy do not destroy diversity jurisdiction." Id. As a result, the court retains subject matter jurisdiction.

### II. Standard of Review

The same standard of review applies to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6). Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores,

Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside of the pleadings under Rule 12(c). Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record and materials that do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). In this case, the court properly considers the insurance policy.

**III. Coverage**

In Minnesota, the interpretation of an insurance policy is a question of law.[6]  Am. Family Ins. Co. v. Walser, 628 N.W.2d 605,

---

[6] The parties do not dispute that Minnesota law applies to the insurance policy.

609 (Minn. 2001). The court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). The court gives unambiguous language its plain and ordinary meaning and construes ambiguous language against the drafter and in favor of the insured. Id. at 880; Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Language is ambiguous if it is "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). However, the court "guard[s] against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006) (citation and internal quotation marks omitted).

The insured must first establish a prima facie case of coverage. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009). If coverage is established, the burden shifts to the insurer to prove that a policy exclusion applies. Id. at 313. The court strictly construes exclusions against the insurer, in light of the insured's expectations. Thommes, 641 N.W.2d at 880. If the insurer demonstrates that an exclusion applies, the insured bears the burden of proving an exception to the exclusion. SCSC Corp., 536

N.W.2d at 314. The parties do not address whether Restaurant Recycling has established a prima facie case of coverage and instead move directly to whether the absolute pollution exclusion applies.

### A. Contaminant

Restaurant Recycling argues that the pollution exclusion does not apply because lasalocid can be administered to swine and other animals at safe levels and, therefore, is not a contaminant.[7] The court is not persuaded.

The parties agree that a contaminant is defined as "one that contaminates" and to contaminate is "to make impure or unclean by contact or mixture." Brouse v. Nationwide Agribusiness Ins. Co., No. A14-1729, 2015 WL 4507996, at *4 (Minn. Ct. App. July 27, 2015) (quoting The American Heritage Dictionary of the English Language 406 (3d ed. 1992)). Although courts should be mindful that "there must be a limit to the construction of what constitutes an irritant or contaminant," Auto-Owners Ins. Co. v. Hanson, 588 N.W.2d 777, 781 (Minn. Ct. App. 1999), the mere fact that a substance is safe at certain levels does not necessarily exclude it from being a contaminant. See League of Minn. Cities Ins. Tr. v. City of Coon Rapids, 446 N.W.2d 419, 421 (Minn. Ct. App. 1989) ("It defies logic to suggest that a chemical compound does not qualify as a pollutant

---

[7] For purposes of this motion, Restaurant Recycling does not dispute that lascadoil is a pollutant under the policy.

merely because, at some highly diluted level, it does not noticeably irritate the human body.  If that were so, there would be very few, if any, chemicals which would qualify as 'pollutants.'"); see also Hastings Mut. Ins. Co. v. Safety King, Inc., 778 N.W.2d 275, 297 (Mich. Ct. App. 2009) ("Chlorine added as a disinfectant in a public pool would not usually be considered a 'contaminant,' but chlorine added in the same concentration in someone's drinking water would be considered a 'contaminant.'").  Accordingly, although lasalocid can be administered to swine safely at some levels, it may still qualify as a contaminant.

Restaurant Recycling next claims that, even if lasalocid is a contaminant at certain levels, the policy exclusion does not apply because the underlying complaint fails to allege that the swine feed contained unsafe or illegal levels of lasalocid.  This argument has no merit.  Although the complaint does not specifically allege that lasalocid was administered at unsafe or illegal levels to swine, one may logically conclude from the damage claimed - such as the death of nursery pigs - that Restaurant Recycling's fat product was contaminated with unsafe levels of lasalocid.  See ECF No. 9-1 ¶¶ 14-15.  Because the property damage in the underlying action was allegedly caused by harmful levels of lasalocid, the court finds that lasalocid is a pollutant as defined

by the policy.[8]

### B. Dispersal

All parties agree that the plain meaning of "disperse" is "to cause to break up" or "to cause to become spread widely." Hobson v. Indian Harbor Ins. Co., No. 316714, 2015 WL 1069242, *4 (Mich. Ct. App. Mar. 10, 2015). As alleged, Restaurant Recycling received contaminated soy oil and blended it with recycled restaurant grease. Compl. ¶ 25. NFP then blended the contaminated fat product with grain to create swine feed. ECF No. 9-1 ¶ 13. In other words, contaminants were dispersed throughout fat and then dispersed again throughout the swine feed. Moreover, but for the dispersal of the contaminants throughout the fat and the swine feed, NFP's swine would not have been harmed. See Townsends of Ark., Inc. v. Millers Mut. Ins. Co., 823 F. Supp. 233, 240-41 (holding that a pollutant was dispersed when it contaminated chicken feed and that feed was mixed with other ingredients).[9]

NFP argues that the contaminants were not dispersed because

---

[8] Given this finding, the court need not address Restaurant Recycling's arguments that lasalocid is not an irritant, chemical, or waste.

[9] NFP and Restaurant Recycling argue that because Townsends was decided after discovery, the court should not resolve the case at this stage. It fails, however, to cite to any disputed facts that require the benefit of discovery. Furthermore, the interpretation of an insurance policy is decided as a question of law. Walser, 628 N.W.2d at 609. Accordingly, discovery is not needed for the court to apply the plain meaning of an unambiguous insurance policy.

they were never separated from the fat product. This argument is wholly without merit. Under the plain meaning of "disperse," a substance need not be spread widely in its pure state; therefore, whether the contaminants were separated from the fat product is irrelevant. NFP also argues that the damage to its swine was not caused by the <u>dispersal</u> of lasalocid and lascadoil but rather by their <u>presence</u> in the feed. This argument is likewise frivolous; the contaminants would not have been present in the feed but for having been dispersed into the fat product and then into the feed.

Restaurant Recycling also argues that the contaminants were not dispersed because "disperse" means "to cause to break up" or "to cause to become spread widely." Therefore, it asserts, the act of dispersal must be knowing and intentional. But Restaurant Recycling cites no cases in support of this argument. Indeed, other courts have found a dispersal regardless of an actor's intent. <u>See, e.g.</u>, <u>Hanson</u>, 588 N.W.2d at 778, 781 (holding that the flaking of lead paint chips caused by the opening and shutting of a window constituted a dispersal); <u>Townsends</u>, 823 F. Supp. at 240-41 (holding that a pollutant was dispersed when it contaminated chicken feed and that feed was mixed with other ingredients). Further, Restaurant Recycling's intentions are irrelevant; the insurance policy only requires that the dispersal be the proximate cause of the damage. Here, but for Restaurant Recycling's actions, the contaminants would not have been dispersed into the fat product

10

and swine feed. Because the underlying litigation arises out of an alleged dispersal of a pollutant, the pollution exclusion provision applies. As a result, EMC has no duty to defend or indemnify Restaurant Recycling under the insurance policy.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for judgment on the pleadings [ECF No. 14] is granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July, 14 2017

s/David S. Doty
David S. Doty, Judge
United States District Court